UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:15-cv-01824-Orl-41GJK

R. ALEXANDER ACOSTA,
Secretary of Labor,
United States Department of Labor,

      Plaintiff,

v.

CARING FIRST, INC.; IVANAH V. THOMAS,
an individual; and TIMOTHY THOMPSON,
an individual,

      Defendants,

_____/

**DECLARATION OF KARLA ROSADO**
**IN OPPOSITION TO THE PLAINTFF'S AUGUST 16, 2017**
**MOTION FOR SANCTIONS [DOC. 86]**

      I, KARLA ROSADO, under penalty of perjury declare that the following is true and correct:

      1.     I am over 18 years of age and have personal knowledge of the facts stated herein.

      2.     I execute this Declaration of my own free will and accord.

      3.     I have been continuously part time employed in the office by Caring First, Inc., since approximately June 22, 2015.  My duties include filing, data entry to submit to the Florida Medicaid program by extracting data from Florida Medicaid approved forms signed by the caregivers and Human Resources.  The caregivers' forms contain the date and number of hours worked, in order for the Florida Medicaid Program to process the forms to pay for the nurses' time providing their services to the Florida Medicaid approved patients.

1

4.    I have reviewed the following statement made on pages 9-12 of the Secretary of

Labor's Motion filed August 16, 2017, as Document 86:

> On July 20, 2016, Defendants produced an Excel spreadsheet, entitled
> "Copy of revised Master List of Caregivers pay schedule." According
> to the "Information" page, this spreadsheet was first created on July
> 6, 2016 by Caring First's administrative employee Karla Rosado. [A
> true and correct screen shot of the "Information" page for the "Master
> List" spreadsheet is attached as Exhibit 3]. In his email to which this
> spreadsheet was attached, Mr. Brand claimed that this was the
> comprehensive list of recreated hours-worked during the relevant
> timeframe. Mr. Brand affirmatively represents that the hours-worked
> by all nurses — including those involved in private litigation — are
> included in this "Master List" spreadsheet. [A true and correct copy
> of this email exchange dated July 20, 2016 is attached as Exhibit 4].
> The Secretary relied upon this spreadsheet to calculate back wages
> during the time period in which the payroll spreadsheets had been
> destroyed. WHI Podczaski, in calculating these back wages, noted
> that at least one nurse known to have worked during this time period
> — Matthew Kilgore — was not included on the spreadsheet. [Docket
> No. 62-5, ¶ 14]

> On August 6, 2017, more than a year after Defendants produced the "Master List"
> spreadsheet purported to contain hours-worked by "all nurses", Mr. Brand
> produced two Excel spreadsheets as potential exhibits.[6] [A true and correct copy
> of the email to which these two spreadsheets are attached is attached as Exhibit
> 5]. One was entitled "Master List (2012-2016)" and appears to contain the same
> or similar information as was disclosed on July 20, 2016.[7] The second Excel
> spreadsheet entitled "Master List — Fosters" is a separate compilation of hours-
> worked by nurses who worked at one particular home. According to the
> "Information" or metadata for the "Fosters" spreadsheet, it was created by Karla
> Rosado on July 7, 2016, only one day after the "Master List" produced to the
> Secretary had also been created by Karla Rosado, and was last modified by Ivia
> Rosado on July 11, 2016.[8] [A true and correct screen shot of the "Information"
> page for the "Fosters" spreadsheet is attached as Exhibit 7]. The hours-worked by
> five nurses on the Secretary's Amended Appendix A, including Matthew Kilgore,
> are included on this newly-produced "Fosters" spreadsheet. This list was not
> produced by Defendants during discovery. Immediately upon receiving this
> spreadsheet, the Secretary updated its back wage and liquidated damages
> computations to include the hours-worked by these five employees as recorded
> on the "Fosters" spreadsheet. As a result, the back wages and liquidated damages

2

claimed by the Secretary for these employees have increased by $64,797.00.

When counsel asked Mr. Brand to explain his failure to produce the "Fosters" spreadsheet during discovery, he responds with a strange and unprofessional rant. [A true and correct copy of this email is attached as Exhibit 6], He also claims that the "Fosters" spreadsheet had been "prepared by me for purposes of my trial exhibits." Given the metadata of the document, which indicates it was created and last modified in July 2016 by Karla and Ivia Rosado, respectively, this statement is unlikely to be true. Indeed, it appears that Mr. Brand is lying about the province and author of this putative exhibit, calling the credibility of all representations and documents created by Defendants into question.

In addition, on August 6, 2017, Mr, Brand also produced as a possible defense exhibit a series of voided paychecks and their related paystubs from the time in which the payroll records were unavailable. [A true and correct copy of the email chain between counsel and attached proposed defense exhibit is attached as Exhibit 8]. These paychecks and stubs show that Caring First's practice during this time period was to include the work week and number of hours-worked by the nurse payee on the memo line of the paycheck. Until Mr. Brand produced these paychecks, the Secretary was unaware of Defendants' practice of writing dates of the work week and hours-worked on the issued paychecks. Indeed, Attorney Brand denied that copies of the paychecks would provide the information necessary, and the paystubs Defendants showed to WHI Podczaski while on-site did not contain this information. [See Exhibit 1 (Tr. 38:10-17; 45:7-14); Exhibit 2]. Because of the memo line lists hours-worked, the paychecks and stubs are clearly important source documents from which back wages during the time period in which the payroll spreadsheets were destroyed could have been more accurately and easily determined.

On August 12, 2017, Mr. Brand produced another possible defense exhibit which included another copy of a paycheck, also listing the work week and number or work hours on the memo line. [A true and correct copy of the email and relevant portion of attached proposed defense exhibit is attached as Exhibit 8]. This copy of a cashed paycheck was acquired from Wells Fargo Bank. These paychecks — which clearly contain the name of the nurse, the dates of the work week, the hours-worked within that workweek, and the total wages paid — are far superior as source documents than the nearly 43,000 unorganized pages of patient service logs which Defendants made available to be copied. Furthermore, a bank could produce copies of these paychecks in order of their issuance, making them much easier documents to rely upon in recreating the hours-worked during the time period in which Defendants were destroying their weekly payroll spreadsheets.

5.     Attached to this Affidavit as Composite Exhibit "A" is a copy of what the above-

quoted paragraphs refers to as Exhibit 3, Exhibit 4, Exhibit 5, Exhibit 6, Exhibit 7 & and Exhibit

8 (ECF Documents 86-3 through 86-9).

6.     During July 2016, when Craig A. Brand, the attorney for the Defendants in this case, is being accused of misrepresenting his role concerning preparation of the "Copy of revised Master List of Caregivers pay schedule" and the "Master List–Fosters" spreadsheets Mr. Brand was present almost daily in the Caring First, Inc., office.  Mr. Brand mainly utilized the computer at my desk, as I was only there part time, to prepare these spreadsheets; however, on occasion, he also utilized the office computers of Ivia Rosado and Ivanah Thomas to do his work.  Mr. Brand would have the office staff, including me, Ivia Rosado, and Ivanah Thomas, provide him records and answer questions about the completed Florida Medicaid forms completed by the patient's caregivers and contained in the patient's files.  These forms included, among other details, the dates and number of hours worked.  Mr. Brand would then input information into the spreadsheets he had prepared at our office.

7.     These were the same patient records contained in the approximately 40 boxes which had been brought from the Caring First, Inc. storage facility to the office in early March 2016 and made available to the Secretary of Labor's representatives who had come to the Caring First, Inc. office in March 2016 to review them and then removed the boxes from our office for about two weeks or so to copy them.

8.     Although my name appears as the author of "Copy of revised Master List of Caregivers pay schedule" and the "Master List–Fosters" spreadsheets, I can state with absolutely certainty that Mr. Brand authored these spreadsheets and input the information to update them. These spreadsheets were prepared by Mr. Brand.  When Mr. Brand had finished preparing the "Copy of revised Master List of Caregivers pay schedule" and the "Master List–Fosters" spreadsheets, he made a copy and took the copy with him.

4

9.     Mr. Brand prepared a specific spreadsheet listing names of the Caregivers who had worked at the residential facility operated by the Fosters and I believe are part of separate litigation.  I believe Mr. Brand stated that there was a particular reason why he needed that information for this lawsuit, but I do not recall why.

10.     I have examined the voided checks included in ECF Document 86-8 and the cashed check included in ECF Document 86-9 referred to in the above-quoted wording listed in paragraph "4" above.  These voided checks and the cashed check for $800.00 payable to Glory Rodriguez were contained in a special file relating to Glory Rodriguez and Karen Reyes and the unlawful termination lawsuit filed by Glory Rodriguez and Karen Reyes against Caring First, Inc., in Orange County Case No. 2015-CA-008926-O in September 2015 and the Counterclaims filed against them by Caring First, Inc.

11.     I note that the voided checks and the separate cashed check payable to Glory Rodriguez and endorsed by Glory Rodriguez did not list the specific days and hours worked by the employee during the pay period.  That information could only be obtained by reviewing the actual payroll records which were submitted and signed by Glory Rodriguez.  Those forms were provided to the Plaintiff as well as approximately 40 boxes provided to the Secretary of labor's representatives and were the same forms consulted by Mr. Brand in his preparation of the "Copy of revised Master List of Caregivers pay schedule" and the "Master List–Fosters" spreadsheets.

12.     **The significance of cashed check number 32496 payable to Glory Rodriguez contained in ECF Document 86-9 reflects the problem with simply relying on the beginning and ending dates of the pay period and total hours listed on the check.  The actual hours worked by Glory Rodriguez during the referenced pay period was 40 and Karen Reyes issued a false paycheck to Glory Rodriguez for 80 hours.  The only way Caring First, Inc.**

5

could have ascertained that was by checking the actual time records submitted by and signed by Glory Rodriguez.

UNDER 28 U.S.C. § 1748, I DECLARE UNDER PENALTY OF PERJURY THAT THE STATEMENTS PROVIDED IN THE FOREGOING DECLARATION ARE TRUE AND CORRECT.

_karla rosado_
KARLA ROSADO

Date: August 29, 2017

6